SMITH v. PORT HURON GAS & ELECTRIC CO.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—RIGHT TO PROCEED AGAINST EMPLOYER OR THIRD PARTY—ELECTION WIPES OUT OTHER REMEDY.

Under the Michigan workmen's compensation act, where an injury for which compensation is payable was caused under circumstances creating a legal liability in some person other than the employer, the employee may at his option proceed either at law against that person to recover damages or against the employer under the act,

but not against both; the election of one remedy wiping out the other (2 Comp. Laws 1915, § 5468).

2. SAME—AGREEMENT BY EMPLOYEE AND EMPLOYER—APPROVAL BY DEPARTMENT OPERATES AS ELECTION — FRAUD — COLLATERAL ATTACK.

  The approval by the department of labor and industry of a contract entered into by the employer and employee under the workmen's compensation act operates as an election by the employee, extinguishes his right to maintain an action for damages against the third party, and transfers or assigns such right to the employer, and this result may not be assailed in a collateral proceeding on the ground of fraud.

3. SAME—FRAUD—EQUITY—JURISDICTION.

  A contract for compensation under the workmen's compensation act, entered into by an employee and his employer and approved by the department of labor and industry, may not be impeached for fraud in a collateral proceeding, but may be impeached in a direct proceeding in equity.

Error to St. Clair; Tappan (Harvey), J. Submitted January 31, 1922. (Docket No. 66.) Decided March 30, 1922.

Case by William A. Smith against the Port Huron Gas & Electric Company for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed.

*P. H. Phillips* and *W. L. Jenks,* for appellant.

*Burt D. Cady* and *Walsh & Walsh,* for appellee.

FELLOWS, C. J. On August 7, 1918, plaintiff was in the employ of the Mueller Metals Company, located at Port Huron. He was an electrician. On that day he received an injury in the course of his employment and arising out of the same by coming in contact with a switch then recently installed in the Mueller prop-

erty by the defendant, Port Huron Gas & Electric Company. On August 21st, he entered into an agreement for compensation under the workmen's compensation act with the Travelers' Insurance Company, the insurer of the Mueller Company. On August 30th, this agreement was approved by the industrial accident board. Plaintiff has not accepted such compensation although on at least one occasion payment was offered. December 5, 1919, the present action was brought against the Port Huron Gas & Electric Company, claiming that it is liable in a common-law action for negligence which negligence it is claimed was the proximate cause of plaintiff's injuries. Defendant in its defense denies that it has breached any duty it owes plaintiff, denies that it is guilty of any negligence, and insists that plaintiff has elected to proceed against the Mueller Company and its insurer for compensation under the provisions of the workmen's compensation act and can not maintain this action against this defendant. Over defendant's objection plaintiff was permitted to give testimony tending to show that he did not intelligently sign the contract with the Mueller Company and that his signature was procured by the fraud of the agents of that company. The trial resulted in a judgment for $9,600 which is reviewed on this writ of error. Defendant here insists on all the grounds of defense presented in the court below, but we deem it necessary to discuss but one of the defenses as it disposes of the case.

Section 15, part 3, of the workmen's compensation act (section 5468, 2 Comp. Laws 1915), provides:

"Where the injury for which compensation is payable under this act was caused under circumstances creating a legal liability in some person other than the employer to pay damages in respect thereof, the employee may at his option proceed either at law against that person to recover damages, or against the employer for compensation under this act, but not

against both, and if compensation be paid under this act the employer may enforce for his benefit or for that of the insurance company carrying such risk, or the commissioner of insurance, as the case may be, the liability of such other person."

Provisions of similar purport, sometimes couched in different language, will be found in the British acts and in the compensation acts of the different States. Some of these provisions do not go as far as our act does and are simply designed to prevent a double recovery without putting the employee to his election. The British acts, and we think this should be borne in mind in considering the British cases, inhibit a double recovery but make the receipt of compensation a bar to an action for negligence; they expressly permit actions against the employer for negligence in certain cases but provide that if the employee fails in such suit he may in the same action be awarded his compensation if entitled to it subject to have deducted therefrom the expenses of the litigation; section 1 (4), chap. 37, 60 and 61 Vict.; section 1 (4), chap. 58, 6 Edw. VII. These provisions of the British act render the British decisions less helpful upon the question of election, but they should, however, not be overlooked. In this connection attention should be called to the fact that under our statute an election to proceed either in a common-law action against the third person or for compensation against the employer under the statute wipes out the other remedy. In *Albrecht Co.* v. *Iron Works*, 200 Mich. 109, this court said:

"After Debinski was injured he had his choice of two remedies. He could pursue his common-law remedy against the company, whose negligent acts caused his injuries, or he could demand compensation from his employer through the industrial accident board. He chose the latter and received an award of $10 per week for 400 weeks. This election by him under the

terms of the act would amount to a waiver upon his part of his common-law remedy (section 15 *supra*). The common-law action *having been extinguished by Debinski's election,* an assignment of it could not furnish a basis for this suit, and we do not understand it is now so claimed, although one count of the declaration counted upon an assignment of the cause of action."

And in *Gray* v. *Brown & Sehler Co.,* 200 Mich. 177, where we were considering section 1, part 6, of the act (section 5488, 2 Comp. Laws 1915), it was said:

"This section makes the filing of a claim a 'release' of 'all claims and demands at law,' and is one of the essential features of the act. This court and other courts of last resort have so frequently commented on the purposes of this act and similar legislation in other States, that it is unnecessary to here repeat what has so often been said, further than to say, that among its purposes was the elimination of expenses and delays growing out of litigation between employees and employers, a purpose which could be easily frustrated by permitting employees to bring litigation based upon common-law liability, while at the same time holding fast to the statutory right to compensation. This the legislature clearly sought to prevent by this section. It is patent that the legislature contemplated that parties should not be permitted to play fast and loose with this meritorious legislation, that the legislature clearly had this in mind when this provision was incorporated in the act."

The precise question here involved, *i. e.,* may the plaintiff in a collateral proceeding impeach the finding of the board and the contract upon which it is based, has not arisen with any degree of frequency either in this country or in England and is before this court for the first time. In fact there is not a sufficient trend of decisions to establish a rule or to prevent this court from adopting a rule which will be in accord with the purposes of the act. In *Little* v. *P. & W.*

*Maclellan*, 37 Scot. L. R. 287, the action was against the master for negligence. Several receipts for compensation were produced. Lord Justice-Clerk said:

"The pursuer here is brought face to face with the fact that receipts for the sums paid to him have been granted by him in very specific terms."

He then states that the pursuer sought to amend the pleadings by alleging that he did not understand that he was making the election. This was denied, the Lord Justice remarking:

"That amendment does not appear to me to be relevant to be admitted to probation with the view of showing that he was entitled to have these documents set aside. I am therefore for sustaining the defenders' fourth plea and dismissing the action."

Lord M'Laren and Lord Thayer agreed although intimating that another question would be presented if the receipts had not been properly procured. In *Kelly* v. *Railway Co.*, 53 Scot. L. R. 53, plaintiff, an employée of the corporation of Glasgow, brought the action against the railway company for its negligence. It was insisted that he had received compensation from his employer but was permitted to show that the money was not paid *as* compensation but to tide him over his misfortune and the *Little Case* was distinguished. But in *Aldin* v. *Stewart*, 53 Scot. L. R. 49, it was held (we quote from the syllabus) :

"A workman while in the course of his employment was knocked down and injured by a motor car. He received payments from his employers, and signed receipts for certain sums 'being compensation for accident.' He thereafter brought an action against the owner of the motor car. He stated that when he signed the receipts he was in minority, had no legal advice, and was unaware of his legal rights, particularly of his right to choose between compensation from his employer and damages from the owner of the car.

"*Held,* that the workman had recovered compensation in the sense of the act, and was not entitled to maintain an action of damages.  *Per* the Lord President—'All the statute deals with is the question of fact—Did he *de facto* recover compensation from his employer under the statute?  If so, the claim is barred.' "

In *Oliver* v. *Shipping Co.,* 5 W. C. C. 65, the receipts had been given "without prejudice" and it was held that under the circumstances plaintiff's action for negligence was not barred, and in *Rouse* v. *Dixon,* 6 W. C. C. 44, it was held that a request for arbitration which was abandoned after answer filed showing the employee had no chance of succeeding under the act was not a bar.  But in *Cribb* v. *Kynoch,* 2 (1908) K. B. 551, it was held that the employee could not successfully maintain a proceeding for compensation after an unsuccessful common-law action had terminated although she had given notice some thirteen months before.  *Huckle* v. *London County Council,* 4 B. W. C. C. 113, is sustaining of plaintiff's contention. These cases, as we have already noted, were under acts which did not make the bringing of a proceeding alone an election.

*Barry* v. *Railway Co.,* 222 Mass. 366 (110 N. E. 1031), is relied upon by plaintiff's counsel.  No doubt the court in that case sustains counsel's contention but the case was disposed of by the holding of the court that plaintiff could not recover because he had accepted and receipted for compensation under the act. Under these circumstances the holding of the court relied upon was not necessary to decision and was *obiter dictum.*  *Brabon* v. *Gladwin Light & Power Co.,* 201 Mich. 697, is also relied upon by plaintiff's counsel.  In that case the question was whether plaintiff had proceeded under the statute.  She had not, as had this plaintiff, entered into a contract which had been

approved by the board. In disposing of the case it was said in the prevailing opinion:

"On the other hand, we have legislation which requires interpretation and, in the administration of the law, application, in harmony with its general purpose. It both creates a liability and provides a method for enforcing it. To *proceed* under it, against an employer, is to give notice of an injury, make a claim for compensation, secure the judgment and finding of the board upon all points involved, *or its approval of any agreement for compensation which the interested persons may enter into.*"

In *McGarvey* v. *Oil & Grease Co.*, 156 Wis. 580 (146 N. W. 895), it was said by Mr. Justice Marshall, speaking for the court:

"It is conceded, as the fact is, that, in case of an employee, in the course of his employment, being injured by the actionable negligence of a third person, a statutory remedy accrues to him for compensation, against his employer and a common-law remedy against such third person, though he cannot have but one satisfaction. If he elects to pursue the latter remedy he waives the statutory right, and if he elects to pursue the former, the employer by succession,— *ipso facto et eo instanti,*—becomes the owner of the right against the wrongdoer and 'may enforce the same in his own name.' "

And in *Friebel* v. *Railway Co.*, 280 Ill. 76 (117 N. E. 467), it was pointed out that payment by the employer of compensation was not necessary before he would be subrogated to the employee's right of action against the third party, and in *Sabatino* v. *Construction Co.*, 168 N. Y. Supp. 495, it was said:

"Plaintiff urges that until the award is paid there is no consideration for the assignment, but this is not so. The statute gives a new remedy, and as a condition of its enjoyment requires a surrender of any cause of action against third parties. This is ample consideration for the assignment; the employee is not

obliged to pursue the statutory remedy, but, if he does, he surrenders his claim against others. If the statute had intended the assignment should only become effective on payment, it could have so provided. It did not. On the contrary, as above pointed out, the language seems clear that such was not the intent.

"The construction contended for by the plaintiff would inject so much uncertainty and lead to such confusion as to the rights of the parties in regard to the claim against third parties, that it is difficult to believe such a condition was intended. If the employee claims under the statute, the party liable to pay the compensation is entitled to the benefit of the claim against third parties, and to take such steps to protect his interest and enforce the claim as he deems advisable. *Lester* v. *Otis Elevator Co.,* 169 App. Div. 613 (155 N. Y. Supp. 524). On the other hand, if the employee does not take under the statute, he retains the full benefit and control of the claim against third parties, with authority to compromise or settle it, and should be free to take such steps to protect his interest as he may deem advisable.

"If, as plaintiff contends, the assignment does not become effective until payment of the award, it is evident that during this period there would be uncertainty as to who would be ultimately entitled to this claim and as to the rights or interests of the parties and a manifest inability of either to effectively act so as to protect his interests. It is improbable a construction which would lead to such results is in accordance with the intent of the legislature."

The Kentucky statute permits proceedings against the employer for compensation and actions against the third party for negligence without putting the employee to an election. But in *Book* v. *City of Henderson,* 176 Ky. 785 (197 S. W. 449), it was held that in the action against the third party the employer was a necessary party.

It must be taken as settled by the *Albrecht Case, supra,* and these cases that the approval by the board (now department of labor and industry) of a con-

tract entered into by the employer and employee under the provisions of the act operates as an election by the employee, an extinguishment of the right in him to maintain an action for negligence against the third party, and a transfer or assignment of such right to the employer, a subrogation, which may be enforced by the employer in his own name for indemnity only. This results from the operation of the law. May this result be assailed in a collateral proceeding on the ground of fraud? We think not. Manifestly if the action of the board had been the judgment of a court, it could not be thus assailed in a collateral proceeding. While the board exercises *quasi*-judicial functions, it is not a court, but under section 13 of part 3 of the act (section 5466, 2 Comp. Laws 1915), by the filing of a certified copy of its approval of the contract, judgment may be entered without notice. Indeed, in the instant case plaintiff by following this provision could have judgment entered against his employer although the judgment in the instant case for all his damages was in full force and effect. Such a situation would do violence to the plain purpose of the act. In *Estate of Beckwith* v. *Spooner*, 183 Mich. 323 (Ann. Cas. 1916E, 886), we held (quoting from the syllabus):

"An employer's agreement filed with and approved by the accident board, granting compensation to a servant for injuries sustained in the course of his employment, is a substitute for, and under the statute is the legal equivalent of, a final award of the board, and has equal force and standing, when, to enforce recovery, it becomes necessary to put them in judgment in the circuit court."

It is pointed out by counsel that except for the purpose of reviewing weekly payments the board is without power to grant a rehearing. *Pocs* v. *Buick Motor Co.*, 207 Mich. 591; *Diebel* v. *Construction Co.*, 207 Mich. 618; *Jones* v. *St. Joseph*

*Iron Works*, 212 Mich. 174.    But we do not think
plaintiff is without remedy.    Here we have an order
of the board approving a contract, which order is the
equivalent of and tantamount to a final award by the
board.    *Estate of Beckwith* v. *Spooner, supra*.    In
the recent cases of *Jackson* v. *Insurance Co., ante*, 301,
and *Palmer* v. *Insurance Co., ante*, 292, we had an an-
alogous question before us.    In both cases the ques-
tion of the liability of the insurance company had been
submitted to arbitrators and in both cases actions at
law had been brought and the trial court had per-
mitted the impeachment of the award for fraud on
the law side of the court.    Both cases were reversed
for this holding and it was pointed out that the award
could only be set aside in a court of equity.    In the
*Jackson Case* it was said by Justice WIEST, speaking
for the court:

"If plaintiff Oursler became transferee of the policy
he took it subject to all of its terms and provisions
and he could not treat the finding of the arbitrators
as void and bring suit at law and there attack such
finding collaterally.    Such finding can only be set
aside, if at all, in a court of equity (citing authori-
ties)."

And in the *Palmer Case* it was said by Chief Justice
STEERE, likewise speaking for the court:

"In the instant case plaintiff submitted to an award
and exhausted that remedy. ‾ Leaving the award
against him standing, he commenced an action at law
in assumpsit to recover on his policy of insurance,
and when the award was interposed as a defense
sought to attack it collaterally on the ground of fraud.
This he may not do.    His primary remedy is by di-
rect proceedings against the award in a court of equity
where rests special jurisdiction in matters of fraud,
accident, mistake, etc.    In this State distinct equitable
jurisdiction over awards is not wanting, as in certain
code States where the distinction between law and

chancery courts has been abolished. *Brown* v. *Kalamazoo Circuit Judge*, 75 Mich. 274 (5 L. R. A. 226).

" 'A court of equity cannot abdicate its duty or submit its conscience to what a jury might do in any case, not even that of an individual against a corporation. Under the Constitution and laws of this State, a court of law is not the proper forum to determine whether an award under an arbitration agreed to by the parties thereof, was corruptly and fraudulently made. Courts of equity alone are clothed with the power to set them aside.' *Michels* v. *Underwriters' Ass'n*, 129 Mich. 417."

We therefore conclude that the order of the board approving the contract between plaintiff and the Mueller Company, which was under the law an award of compensation to plaintiff, was a bar to plaintiff's right to recovery in this case; that it may not be impeached for fraud in this collateral proceeding but may be impeached in a direct proceeding in equity, in which proceeding everyone interested should be made parties so that they will be bound by the decree.

The judgment must be reversed with a new trial. Defendant will recover costs of this court.

WIEST, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.

The late Justice STONE took no part in this decision.